**NOT FOR PUBLICATION**

```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| SUE ANN MINARD, et al., | CIVIL ACTION NO. 06-645 (MLC) |
| Plaintiffs, | **MEMORANDUM OPINION** |
| v. | |
| M. IAZZETTI, et al., | |
| Defendants. | |

**COOPER, District Judge**

Plaintiffs, Sue Ann Minard, Patricia Furino, and Elena Shuster (collectively "plaintiffs"), allege that defendants, M. Iazzetti and the Estate of Martin H. Adler (collectively "defendants"), breached their fiduciary duties of care and loyalty under the New Jersey Uniform Partnership Act ("the Act"). (Dkt. entry no. 23, 2d Am. Compl. ("Compl.").)  Defendants move to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and plaintiffs oppose the motion. (Dkt. entry nos. 24 & 31.)  For the reasons stated herein, the Court will grant the motion.

                            BACKGROUND

Plaintiffs and defendants are members of Iazzetti & Adler ("I&A"), a New Jersey general partnership formed in 1984 to develop a parcel of real estate in Jersey City, New Jersey ("the property"). (Compl., at ¶¶ 1-2.)  I&A acquired the property in

June of 1984 from Anthony Iazzetti, husband of defendant M. Iazzetti, for "$500,000 plus other compensation." (Id. at ¶ 6.) At the time of the transaction at issue in this action, Adler held a 35% interest in I&A, Adler's children each held a 5% interest, M. Iazzetti had a 37.5% interest, and plaintiffs, who are Iazzetti's three children, each held a 4.167% interest. (Pl. Br., at 4; Def. Br., at 3.)

I&A became a limited partner in Liberty Center, L.P. ("Liberty Center") in October of 1984 and transferred its title in the property to Liberty Center as its "capital contribution" to the new partnership. (Id. at ¶ 7; Def. Br., at 3.) According to the partnership agreement, I&A held a 50% limited partnership interest in Liberty Center, Vector Liberty Group held a 49% limited partnership interest, and Vector Realty Associates held a 1% general partnership interest. (Compl., at ¶ 7.)

Liberty Center transferred its interests in the property in 2000 by agreeing with a new investor, Applied Vector, to form the limited partnerships Vector Urban Renewal Associates I, L.P. ("Vector I") and Vector Urban Renewal Associates II, L.P. ("Vector II"). (Id. at ¶ 10; Def. Br., at 4.) Pursuant to that agreement, Applied Vector had a 73% interest in Vector I and Vector II, Liberty Center had a 25% interest in the same, and two other entities each had a 1% interest. (Compl., at ¶ 10; Def. Br., at 4.) Liberty Center distributed its 25% interest to its

2

partners, which resulted in I&A receiving a 12.5% limited partnership interest in Vector I and Vector II. (Compl., at ¶ 10; Def. Br., at 4.) The agreement between the Vector I and Vector II partners anticipated development of the land into two high-rise towers ("the project"), with each tower being constructed in separate phases. (Compl., at ¶ 10.)

Sometime around June of 2003, a representative of Applied Vector approached Adler regarding purchasing I&A's 12.5% interest in Vector I and Vector II "in order to prevent a reversion of the property back to Liberty Center." (Id. at ¶ 12.) Under the terms of the limited partnership agreement for Vector I and Vector II, if Vector I and Vector II did not secure financial and governmental approval for the first phase of the project by September 2003, title to the property would revert back to Liberty Center. (Id. at ¶ 11.) Defendants agreed to sell I&A's 12.5% interest in Vector I and Vector II for $8.6 million to Applied Vector. (Id. at ¶ 12.) A valuation conducted by McGuire Associates on behalf of Applied Vector valued the property at $17.2 million. (Id. at ¶¶ 16-19.) Plaintiffs objected to the sale and refused to sign the Written Consent of Partners authorizing the sale. (Id. at ¶ 23.) Defendants were able to proceed with the sale, however, because their shares constituted the majority of shares necessary under I&A's partnership

3

agreement to proceed with the sale of I&A's assets.  (<u>Id.</u> at ¶ 28.)

## DISCUSSION

### I.   Standard Of Review For A 12(b)(6) Motion

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  On a motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff.  <u>Doe v. Delie</u>, 257 F.3d 309, 313 (3d Cir. 2001).  But a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  "Dismissal of claims under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim upon which relief may be granted."  <u>Jakomas v. McFalls</u>, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the pleadings."  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d at 1426.  However, if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material

4

pertinent to such a motion under Rule 56.  Fed.R.Civ.P. 12(b). An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment.  <u>Angstadt v. Midd-West Sch. Dist.</u>, 377 F.3d 338, 342 (3d Cir. 2004).

**II.  Plaintiffs' Breach of Fiduciary Duty Claims**

Plaintiffs allege that by agreeing to sell I&A's interests in Vector I and Vector II for $8.6 million, defendants violated their fiduciary duties of care and loyalty under the Act:

> a. The only fiduciary duties a partner owes to the partnership and other partners are the duty of loyalty and the duty of care set forth in subsections b. and c. of this section, as those duties may be clarified or limited in the partnership agreement, subject to subsection b. of section 4 of this act.
>
> b. A partner's duty of loyalty to the partnership and the other partners is limited to the following:
>
>   (1) to account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;
>
>   (2) to refrain from knowingly dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest materially adverse to the partnership; and
>
>   (3) to refrain from actions intended to cause material injury to the partnership in the conduct of the partnership business before the dissolution of the partnership.

>      c. A partner's duty of care to the partnership and the
>      other partners in the conduct and winding up of the
>      partnership business is limited to refraining from
>      engaging in grossly negligent or reckless conduct,
>      intentional misconduct, or a knowing violation of the
>      law.

N.J.S.A. § 42:1A-24.

The Court looks not only to the Act but the language of the partnership agreement when discerning the duties owed between the partners. Fortugno v. Hudson Manure Co., 144 A.2d 207, 218 (N.J. App. Div. 1958) (holding that "partnership agreements set forth the rights and duties of the parties and thus govern their relationship"). I&A's partnership agreement does not create any additional fiduciary duties beyond those required by the Act. Relevant to this dispute, however, is the partnership agreement's specification that: "[a]ll matters involving or relating to . . . the purchase, lease or sale of property . . . or the valuation or disposition of assets upon liquidation, shall require the written consent of at least a majority in interest of the partners of the

partnership."  (Dkt. entry no. 24, Cert. of Monica N. Kamison, Ex. A ("Partnership Agreement").)[1]

There is no case law defining or illustrating conduct of the type alleged here constituting breach of the duty of care or the duty of loyalty under the Act.  The Court will therefore rely upon cases applying these terms under Delaware limited partnership and corporate law but otherwise analogous to

---

[1]  The parties argue the business judgment rule applies to decisions made in the partnership context and thus apply this highly deferential standard to the defendants' decision to sell I&A's interest in Vector I and Vector II.  (Def. Br., at 9; Pl. Br., at 11.)  The Third Circuit Court of Appeals, however, has held: "the business judgment rule [] is inapposite in the partnership context because it is a function of the unique corporate setting."  Henkels & McCoy, Inc. v. Adochio, 138 F.3d 491, 502 (3d Cir. 1998); but see Haydinger v. Freedman, No. 98-3045, 2000 WL 748055, at *8 (E.D. Pa. June 8, 2000) (applying business judgment rule in limited partnership context).  The parties failed to cite the Third Circuit Court of Appeals's decision in Henkels, and none of the cases relied upon by the parties apply the business judgment rule in the general partnership context. See Temiz v. Temiz, No. BER-C-385-04, 2006 WL 163503, at *12 (N.J. Ch. Div. Jan. 23, 2006) (applying business judgment rule in context of New Jersey corporation and limited liability companies); Zoren v. Genesis Energy, L.P., 836 A.2d 521, 528 (Del. Ch. Div. 2003) (holding "the corporate general partner and its directors are entitled to the protections afforded corporate directors, including a presumption that their actions are protected from judicial oversight by the business judgment rule"); Seaford Funding Ltd. P'ship v. M & M Assocs. II, L.P., 672 A.2d 66, 70 (Del. Ch. Div. 1995) (applying business judgment rule to general partner's decision to not bring a lawsuit on behalf of partnership because "corporate standards apply to limited partnerships in the 'demand excused' analysis"). The Court concludes the business judgment rule does not apply here because the rule is "inapposite in the partnership context" and the decision in this case was in the context of a general partnership and not a "corporate setting."  Henkels, 138 F.3d at 502; see Compl., at ¶ 1 (stating I&A is a "New Jersey general partnership").

plaintiffs' claims here.  See Smith v. Van Gorkom, 488 A.2d 858, 873 (Del. 1985) (applying gross negligence standard to breach of duty claims in corporate context); Emerald Partners v. Berlin, 787 A.2d 85, 90 (Del. 2001) (same).

**A.   Duty of Care**

Under the Act, a partner breaches the duty of care owed to other partners when engaging in "grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law." N.J.S.A. § 42:1A-24(c).  Plaintiffs allege defendants were grossly negligent and reckless insofar as they failed to adequately appraise and investigate the value of I&A's interest in the property before selling it.  (Compl., at ¶¶ 31-39.)

To demonstrate defendants violated their duty of care, plaintiffs cannot rely merely on a showing of "unfair price" but rather must show that "gross negligence caused the investments to be sold at an unfair price." Katell v. Morgan Stanley Group, Inc., No. 12343, 1995 WL 376952, at *11-12 (Del. Ch. Div. June 15, 1995) (affirming special committee's finding that plaintiffs unlikely to meet burden of showing gross negligence by defendants).  In Litman v. Prudential-Bache Prop., Inc., No. 1237, 1993 WL 5922 (Del. Ch. Div. Jan. 4, 1993), the court rejected plaintiffs' allegations that the defendants, general partners in the limited partnership, breached their duty of care by failing to adequately inform themselves about certain

8

partnership investments. Id. at *5. The court concluded plaintiffs' "generalized allegations" failed to allege "specific instances" where the defendants did not adequately inform themselves and therefore plaintiffs failed to demonstrate "gross negligence." Id. at *5-6 (granting motion to dismiss); see State of Wisc. Inv. Bd. v. Bartlett, No. 17727, 2000 WL 238026, at *5 (Del. Ch. Div. Feb. 24, 2000) (denying injunctive relief because plaintiffs' duty of care claim failed where defendants were adequately informed of all material information reasonably available prior to approving the allegedly negligent business decision).

The Court finds in this case plaintiffs' "generalized allegations" that defendants had a duty to obtain more information about (1) the value of I&A's interests in Vector I and Vector II and (2) the value of the property fail to state a claim for "gross negligence." See Litman, 1993 WL 5922, at *6. Defendants availed themselves of the information available to them at the time of the transaction, namely the property valuation conducted by McGuire Associates. Plaintiffs fail to allege why or how this valuation was inaccurate, other than to claim an "independent fair market value analysis" and "valuation of the partnership interest" was necessary, and that the entire property was recently sold "for the development of a $415 million dollar project." (Compl., at ¶¶ 37, 38; Pl. Br., at 8.) The

9

value or cost of <u>a project being developed on the property</u> is not relevant to whether defendants were grossly negligent in relying on the earlier $17.2 million valuation of <u>the property itself</u>. Moreover, plaintiffs' vague allegation that the valuation of the property was not impartial and not accurate merely because it was conducted at the request of the purchaser of I&A's interest is not supported by any facts and is insufficient to demonstrate gross negligence.

Plaintiffs reliance on <u>Smith v. Van Gorkom</u> is misplaced because plaintiffs do not allege procedural inadequacies comparable to those found in <u>Smith</u>.  The Board of the corporation in <u>Smith</u> (1) met on last minute notice, (2) did not consider any documents concerning the merger, and (3) relied only on a short oral presentation from a fellow board member.  488 A.2d at 874-75; <u>see</u> <u>Ryan v. Aetna Life Ins. Co.</u>, 765 F.Supp. 133, 139 (S.D.N.Y. 1991) (holding that plaintiff failed to state a claim that defendants failed to exhibit due care and distinguishing facts in <u>Smith</u>).  Plaintiffs in this case recite facts demonstrating that defendants followed the procedure outlined in the I&A partnership agreement for selling I&A's assets by receiving written approval from the majority of I&A partners before proceeding with the sale.  (Compl., at ¶ 23; Pl. Br., at

6-8.)[2]  Procedural irregularities of the type alleged in Smith are not alleged by plaintiffs here.

Plaintiffs' argument that "the adequacy of sale price is a question of fact which is not properly the subject of a motion to dismiss" fails as a matter of law because plaintiffs cannot rely on bald assertions that the price paid for I&A's interest in Vector I and Vector II was too low, but rather must allege what "gross negligence" on behalf of defendants caused the sale of the asset at the allegedly low price.  See Katell, 1995 WL 376952, at *11.  The Court finds plaintiffs fail to allege any conduct by defendants that constitutes gross negligence and therefore concludes it was not "grossly negligent" for the defendants to agree to a sale of I&A's 12.5% interest in Vector I and Vector II for $8.6 million, based upon a valuation of $17.2 million for the property.

**B.   Duty of Loyalty**

Plaintiffs allege that defendants violated the fiduciary duty of loyalty through their "uninformed decision to sell I&A's interests in the property for substantially less than the highest value to an insider" and that defendant Adler's "decision to

---

[2]     The defendants' argument that "plaintiffs' breach of fiduciary duty claims are barred because the I&A partnership ratified the transaction" is rendered moot by the Court's conclusion that plaintiffs fail to state a claim for breach of the fiduciary duty of care or loyalty, and therefore will not be addressed by the Court.  (Def. Br., at 12.)

11

accept Applied Vector's offer was the result of self-dealing to the extent that Adler was more concerned in a quick sale of the partnership in order to secure money due to his failing health than he was with the best interests of the partnership." (Compl., at ¶¶ 32, 47.)[3]  The Court concludes that the complaint fails to state facts demonstrating defendants violated their duty of loyalty under the Act by (1) failing to "account to the partnership and hold as trustee for it any property, profit, or benefit . . . including the appropriation of a partnership opportunity," or (2) "knowingly dealing with . . . a party having an interest materially adverse to the partnership," or (3) committing "actions intended to cause material injury to the partnership."  N.J.S.A. §§ 42:1A-24(a)-(c).

"Directors are considered to be 'interested' if they either appear on both sides of a transaction [] or expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally."  In re Seidman, 37 F.3d 911, 934 (3d Cir. 1994) (cites and quotes omitted).  A business decision "could be deemed a breach of the duty of loyalty, if well-pled facts indicated that the strategy was designed to provide

---

[3]     Plaintiffs' allegation as to Adler's motivations due to his failing health is listed in Count I of the complaint alleging violation of the duty of care, but is more properly considered as an allegation of breach of the duty of loyalty since the allegation is essentially one of "self-dealing."

benefits to the General Partner, to the detriment of other unitholders." Miller v. Amer. Real Estate Partners, L.P., No. 16788, 2001 WL 1045643, at *12 (Del. Ch. Div. Sept. 6, 2001) (holding that general partner's decision to reduce and terminate distributions was not breach of duty of loyalty to the limited partners and granting motion to dismiss). "Classic examples of director self-interest in a business transaction involve either a director appearing on both sides of a transaction or a director receiving a personal benefit from a transaction not received by the shareholders generally." Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 362 (Del. 1993).

Plaintiffs' allegation that defendants committed self-dealing is nothing more than a specious legal conclusion without any factual support. Plaintiffs boldly allege "self-dealing" and that defendants sold the property to "an insider." (Compl., at ¶¶ 32, 39, 47.) Plaintiffs, however, offer no facts as to who the alleged insider is or how defendants appeared on both sides of the transaction. The Court therefore concludes plaintiffs offer no facts that even if true would demonstrate defendants appeared on both sides of the transaction, were interested parties, or otherwise committed "self-dealing."

Plaintiffs' argument that defendants committed "actions intended to cause material injury to the partnership" because Adler was motivated by his need to sell the partnership quickly

13

due to failing health and therefore not motivated to sell at the highest price is also unsupported by the facts.  This argument in effect alleges that Adler acted to receive a personal benefit to the detriment of the other partners.  See Miller, 2001 WL 1045643, at *12.  There are no facts alleged, however, showing that Adler received a personal benefit from the sale that the other partners did not.  Plaintiffs have also not offered any plausible reason why defendants would not seek a fair price for I&A's interests in Vector I and Vector II.  The allegation that Adler acted with improper motivation does not state a claim that defendants violated their fiduciary duty of loyalty under the Act.

## CONCLUSION

The Court will grant the motion to dismiss the second amended complaint pursuant to Rule 12(b)(6) because the facts alleged by plaintiffs, even if true, fail to state a claim that defendants violated their fiduciary duties of care or loyalty under the Act.  The Court will issue an appropriate order and judgment.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge